UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MASHUD ALBERTO MEZERHANE BLASINI<br>6454 Enclave Way<br>Boca Raton, FL 33496<br>DHS File No. A 200-847-435<br><br>     Plaintiff,<br>v.<br><br>JANET NAPOLITANO, Secretary<br>U.S. Department of Homeland Security<br><br>ALEJANDRO MAYORKAS, Director<br>U.S. Citizenship and Immigration Services<br><br>VARSENIK PAPAZIAN, Director<br>USCIS, Miami Asylum Office<br>     DHS Headquarters<br>     3801 Nebraska Avenue, N.W.<br>     Washington, D.C. 20016<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civ. No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PETITION FOR A WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY JUDGMENT

1. This action is brought against Defendants to compel the issuance of a decision to Plaintiff regarding his application for asylum properly filed and received by the Defendants over than three years ago, on August 6, 2010.

2. Plaintiff's case remains within the jurisdiction of Defendants, who have improperly withheld adjudication of Plaintiff's asylum application for over 39 months, to the grave detriment of Plaintiff and 14 other members of Plaintiff's immediate family who have independent but related pending asylum applications.[1] Defendants' delay

---

[1] Plaintiff's father and three siblings have simultaneously filed Petitions for a Writ of Mandamus with this Honorable Court. Plaintiff's family members argue that Defendants have either failed to adjudicate their

1

in adjudicating this matter is unreasonable as a matter of law and contrary to the applicable regulations and Defendants' internal policies.

## PARTIES

3. PLAINTIFF, MASHUD ALBERTO MEZERHANE BLASINI, a native of Venezuela, was born on February 28, 1973, and resides in Boca Raton, Florida. Plaintiff is the son of acclaimed Venezuelan businessman, NELSON JOSE MEZERHANE GOSEN ("Mr. Mezerhane Gosen"), who co-founded and co-owned Globovisión, Venezuela's last independent and critical television station. Plaintiff has always abided by U.S. immigration laws traveled frequently between the U.S. and Venezuela with a valid B1/B2 Visitor's Visa. Plaintiff is married to a citizen of Venezuela and is the father of twin daughters, both U.S. citizens. He has never been arrested or convicted of any crime in the United States or anywhere else in the world.

4. Plaintiff last entered the United States on May 8, 2010, and filed his application for asylum with U.S. Citizenship and Immigration Services ("USCIS") on August 11, 2010. Plaintiff's asylum application is based on his past persecution and fear of future persecution on account of his political opinion and his membership in the "particular social group" of the Mezerhane family. *See* 8 U.S.C. §§ 1101(a)(42); 1158(b)(1)(B). As confirmed by various independent, international organizations, as well as the U.S. Department of State in its 2010 Country Report on Human Rights Practices, Plaintiff's family has been the target of systematic persecution by the Venezuelan Government for more than a decade. Plaintiff, who was left with no recourse but to seek asylum in the United States, is now further injured by

---

applications for asylum or failed to issue written notice of approval. See, e.g., Mezerhane Gosen v. Napolitano et al, 1:13-cv-01746 (D.D.C. filed Nov. 8, 2013).

Defendant's failure to adjudicate his application for asylum for more than three years. Although approving an application for asylum is within the discretionary power of the agency, adjudicating an application is a non-discretionary act.

5. DEFENDANTS, JANET NAPOLITANO, Secretary, U.S. Department of Homeland Security ("DHS"); ALEJANDRO MAYORKAS, Director, U.S. Citizenship and Immigration Services ("USCIS"); and VARSENIK PAPAZIAN, Director, U.S. Citizenship and Immigration Services, Miami Asylum Office; are charged by law with the statutory obligation to determine eligibility for asylum. 8 U.S.C. § 1158(b); 8 C.F.R. § 208.9(a).

6. Defendant USCIS, a component of DHS, received Plaintiff's application for asylum on August 6, 2010. Because Plaintiff resides in Florida, the Miami Asylum Office, and Director Papazian, retain jurisdiction over his case. 8 C.F.R. § 208.9(b). Under the Immigration and Nationality Act ("INA"), when an applicant files his application for asylum affirmatively (not in defense to removal proceedings), USCIS has sole authority to adjudicate the application for asylum. 8 C.F.R. § 208.9(a) ("The Service <u>shall</u> adjudicate the claim of each asylum applicant whose application is complete within the meaning of § 208.3(c)(3) and is within the jurisdiction of the Service.") (emphasis added).

## JURISDICTION AND VENUE

7. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction), in conjunction with 28 U.S.C. § 1361 (mandamus), the Administrative Procedure Act ("APA") at 5 U.S.C. §§ 555(b) and 702, and the Immigration and Nationality Act ("INA") and its related regulations.

8. Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Section 242(a)(2)(B)(ii) of the INA (8 U.S.C. § 1252(a)(2)(B)(ii)), does not deprive this Court of jurisdiction, because the action at issue – namely, whether to adjudicate an application for asylum – is non-discretionary and purely ministerial.  8 U.S.C. § 1158(d)(5)(iii) (mandating that "in the absence of exceptional circumstances, final <u>administrative adjudication of the asylum application</u>, not including administrative appeal, <u>shall be completed</u> within 180 days after the date an application is filed") (emphasis added); *cf. Singh v. Napolitano*, 710 F. Supp. 2d 123, 128 (D.D.C. 2010) (holding that the court lacked jurisdiction to consider a challenge to a <u>discretionary</u> action of the Attorney General) (emphasis added).  Section 242(a)(5) of the INA (8 U.S.C. §1252(a)(5)) does not deprive this Court of jurisdiction because the present action is not an action to review a removal order, but rather an action to compel USCIS to adjudicate Plaintiff's application for asylum.

9. The APA requires USCIS to carry out its duties within a reasonable time.  5 U.S.C. § 555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and <u>within a reasonable time</u>, each agency shall proceed to conclude a matter presented to it." (emphasis added).  USCIS is subject to 5 U.S.C. § 555(b).  As set forth below, the 39-month delay in adjudicating Plaintiff's asylum application is unreasonable.  *See, e.g., Aslam v. Mukasey,* 531 F. Supp. 2d 736, 743 (E.D. Va. 2008) (nearly three-year delay in adjudicating an application to adjust status due to prolonged FBI name-checks was *prima facie* unreasonable); *Liu*

4

*v. Novak*, 509 F. Supp. 2d 1, 10 (D.D.C. 2007) (four-year delay in adjudicating an application for adjustment of status was unreasonable); *Yu v. Brown,* 36 F. Supp. 2d 922, 932 (D.N.M. 1999) (two-and-a-half-year delay in processing applications for special immigrant juvenile status and adjustment is *prima facie* unreasonable).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the Defendants' headquarters are located in this District and as a substantial part of the events giving rise to the present claims occurred in this District. Specifically, Defendants have numerous times stated that Plaintiff's Application for Asylum was sent to Headquarters in Washington D.C. for review/and or preparation of a written decision.

## FACTS AND BACKGROUND

*Background Information on the Persecution of the Mezerhane Family in Venezuela*

11. Since 2005, Plaintiff and his family have been the targets of judicial harassment and intimidation by the Chavez regime in Venezuela because Plaintiff's father ("Mr. Mezerhane Gosen") refused to silence the critical editorial line of Globovisión, the last remaining independent television station in Venezuela.

12. President Chavez (now deceased) and his successor (President Maduro), have accused Mr. Mezerhane Gosen of a wide and dumbfounding variety of criminal acts to discredit and vilify him in the national public opinion, to silence Globovisión and to ultimately take control of the television station. As recognized by the U.S. State Department in the 2010 Country Report on Human Rights Practices in Venezuela, the Venezuelan government retaliated against Mr. Mezerhane Gosen by unlawfully seizing all of the Mezerhane family's properties and businesses in Venezuela, raiding their family home, and stealing private possessions and irreplaceable family

mementos. Plaintiff and his family were denied their rights to due process, to freedom of thought and communication, and to own property in Venezuela. Through a relentless campaign of politically-motivated persecution, the Venezuelan government drove three generations of law-abiding members of the Mezerhane family from their home and country.

13. In May 2010, Plaintiff's father, who was already in Miami, Florida for medical reasons, received a threatening phone call from President Chavez, warning him to either end Globovisión's editorial line or "suffer the consequences." Following this threat, Plaintiff, his father, and his three siblings each prepared independent applications for asylum (Form I-589). Plaintiff filed his application on August 6, 2010, and was interviewed by the Miami Asylum Office on August 30, 2010. In his application and in subsequent submissions to USCIS, which were replete with corroborative evidence, Plaintiff established that he was targeted by the Venezuelan government and holds a well-founded fear of future persecution by the Venezuelan government because of his political opinion and his membership in a particular social group of the Mezerhane family.

14. Even after fleeing, the Venezuelan government persisted in persecuting Plaintiff and his family. Presently, President Maduro is carrying on this legacy, refusing to return the Mezerhane family's properties or exonerate Mr. Mezerhane Gosen from the various bogus criminal allegations lodged against him.

15. Plaintiff and his family have suffered and continue to suffer great financial and emotional hardship due to the actions of the Venezuelan government. Consequently, Plaintiff has sought respite and protection in the United States.

*Plaintiff has Exhausted all Administrative Remedies and Other Resources to Obtain Adjudication of his Asylum Claim*

16. Plaintiff has complied with all statutory and regulatory requirements for filing his asylum application. He has attended all interviews and satisfied all requirements of USCIS. Plaintiff has exhausted all administrative remedies and all other resources at his disposal to resolve his long-pending claim. *See generally* 8 U.S.C. § 1158(a); 8 C.F.R. § 208.4. Because no other U.S. Government agency has jurisdiction over his asylum claim, Plaintiff has made numerous status inquiries to USCIS since filing his application in August 2010.

17. In addition to inquiries on his own behalf, numerous members of Congress (Democrats and Republicans), acting in recognition of the Mezerhane family's well-known persecution in Venezuela and their contributions to freedom of expression, have inquired to USCIS regarding the status of the Mezerhane family's pending asylum applications, including Plaintiff's application. For example:

    A.  In February 2011, Representative Connie Mack (formerly representing FL-14) and Representative Ileana Ros-Lehtinen (FL-27) contacted the Miami Asylum Office to voice their support for the Mezerhane family's asylum applications. At that time, the Miami Asylum Office informed them that the applications should be processed within 30 days.[2]

---

[2] Previously, in September of 2010, Defendants had informed Congressman Mack's office that all of the Mezerhane family's asylum applications had been approved on September 21, 2010. That information was later retracted by the Asylum Office. USCIS documents released in response to a Freedom of Information Act/Privacy Act ("FOIA/PA") request show that Defendants entered a final decision of "asylum granted" in Plaintiff's father's case. See Mezerhane Gosen v. Citizenship and Immigration Services, 1:13-cv-01091 (D.D.C. filed July 16, 2013).

7

B.  In May 2011, Senator Marco Rubio (Florida) inquired about the Mezerhane family's pending asylum cases.

C.  On February 29, 2012, Senator Robert Menendez (New Jersey) submitted a request on behalf of Plaintiff's family to then-U.S. Secretary of State, Hillary R. Clinton.  Senator Menendez expressed his frustration with the "extensive delay" in adjudicating the Mezerhane family's asylum applications, given that the family has "fully complied with all statutory and regulatory requirements." He requested that Secretary Clinton "contact [DHS] Secretary Napolitano [to] request[] that USCIS expeditiously review the Mezerhane family's application."

D.  On March 1, 2012, a bipartisan group of eight members of the House of Representatives submitted a written request on Plaintiff's behalf, asking USCIS to "expedite its review of the pending asylum applications" for Plaintiff and his family.  Signatories to this letter included: Representative Eliot Engel (NY-16); Representative Ileana Ros-Lehtinen (FL-27); Representative Connie Mack (formerly representing FL-14); Representative Russ Carnahan (formerly representing MO-3); Representative Mario Diaz-Balart (FL-25, formerly representing FL-21); Representative Albio Sires (NJ-8); Representative David Rivera (formerly representing FL-25); and Representative Theodore Deutch (FL-21).

E.  On May 8, 2013, a bipartisan group of four members of the House of Representatives submitted a written request on behalf of Plaintiff's family, asking USCIS to expedite its review of their asylum applications.

8

        Signatories to this letter included: Representative Engel (NY-16); Representative Ros-Lehtinen (FL-27); Representative Sires (NJ-8); and Representative Deutch (FL-21).

    F.    On May 16, 2013, Representative Joe Garcia (FL-26) submitted a written inquiry to Miami's USCIS District Director, asking the Miami Asylum Office to give the Mezerhane family's cases "all the necessary attention within your standard guidelines and procedures."

    G.    Defendants have responded to Congress members' inquiries with generalizations about how the agency processes asylum applications and the considerations they balance in making a determination.

18. Defendants possess sufficient information to establish that Plaintiff is eligible for and merits asylum under 8 U.S.C. § 1158 et seq. and 8 C.F.R. § 208 et seq.  Yet, in contravention of regulations requiring them to do so, Defendants still have not adjudicated his application.  Plaintiff remains deeply prejudiced by this failure on the Defendant's part.  He remains a stateless individual, with no country to call home.

## CAUSE OF ACTION

19. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-18 above.

20. Defendants' failure to adjudicate Plaintiff's asylum application violates the APA and USCIS' own regulations.  Defendants have a clear, non-discretionary duty to adjudicate applications for asylum; Plaintiff has a clear right to the relief requested; and there is no other adequate remedy available to Plaintiff. *See* 8 U.S.C. § 1158(d)(5)(iii); 8 C.F.R. §§ 208.9(a); 208.19; *see also In re Medicare Reimbursement*

9

*Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005); *Ganem v. Heckler*, 746 F.2d 844, 852 (D.C. Cir. 1984) ("[A] writ of mandamus will issue only when the plaintiff has attempted to exhaust all administrative remedies and only when the defendant has a clear duty to act.").

21. Defendant owes Plaintiff the duty to act upon his pending application for asylum. *See Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 50-51 (D.D.C. 2008) (noting that because USCIS is "the agency responsible" for adjudicating certain applications for immigration relief, the agency possesses a "mandatory, nondiscretionary duty to fulfill this role"). Although Defendants' authority to <u>grant</u> an application for asylum is discretionary, their duty to <u>adjudicate</u> an application is non-discretionary. *Compare* 8 U.S.C. § 1158(b)(2)(A) ("The Secretary of Homeland Security or the Attorney General <u>may</u> grant asylum . . . if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee . . . .") (emphasis added) *with* 8 C.F.R. § 208.9(a) ("The Service <u>shall</u> adjudicate the claim of each asylum applicant whose application is complete within the meaning of § 208.3(c)(3) and is within the jurisdiction of the Service.") (emphasis added). Defendants' duty to adjudicate an asylum application within a timely manner is also considered a core "value and goal" of the USCIS Asylum Office. *See* Asylum Officer Basic Training Course, *Corps Values and Goals* (Sept. 13, 2006) at 4 ("[t]he Asylum Program values timely completion of cases from each Asylum Officer. A delay in processing is distressing and unfair to the applicant ('<u>justice delayed is justice denied</u>'), impedes timely family reunification, risks violating statutory timeframes, and makes the Asylum Program vulnerable to fraud and abuse.") (emphasis added).

22. Through correspondence with Plaintiff and members of Congress, Defendants have responded with mere generalizations about the processing of asylum applications and the considerations balanced. Defendants' responses do not absolve them of their affirmative duty, set forth in their own regulations, to adjudicate an application for asylum pending before them.

23. Defendants breached their duty to act by willfully and unreasonably refusing to adjudicate Plaintiff's application for asylum, filed over three years ago. *See Geneme v. Holder*, 2013 WL 1291237 at *7 (D.D.C. March 31, 2013) (acknowledging that although adjudicating an application for immigration benefits is a "delicate and difficult task . . . that difficulty does not eliminate the agency's obligation to act on plaintiff's application in a reasonably timely manner") (internal citations and quotations omitted); *see also Hamandi*, 550 F. Supp. 2d at 51 (noting that USCIS does not possess "unfettered discretion to relegate aliens to a state of limbo, leaving them to languish there indefinitely") (internal citations and quotations omitted).

24. The numerous procedural irregularities in Plaintiff's, his father's, and his siblings' cases strongly suggest that Defendants have grouped together the family members' separate applications, in violation of USCIS guidelines which mandate that "each [asylum] request be evaluated on its merit." *See* Asylum Officer Basic Training Course, *Making an Asylum Decision,* (Dec. 5, 2002) at 6.

25. Defendants' failure to adjudicate Plaintiff's asylum application violates Plaintiff's right under 8 C.F.R. § 208.9 to have his application adjudicated. Defendants' delay has left Plaintiff and his family members in a state of permanent legal limbo, thereby depriving Plaintiff of the myriad privileges that accompany asylum status in the

United States, including the ability to obtain Lawful Permanent Residence in this country. 8 U.S.C. § 1159(b) (establishing that an asylee may adjust status to lawful permanent residence after having been physically present for at least one year following the grant of asylum). Without adjudication of his application for asylum, Plaintiff remains a stateless person and is deprived of the peace of mind that accompanies knowing one's immigration status in this country.

## PRAYER

WHEREFORE, Plaintiff prays that this Honorable Court:

1. Compel Defendants to perform their duty to adjudicate Plaintiff's application for asylum and issue a written decision;

2. Enter a judgment declaring that Defendants' over three-year delay in adjudicating Plaintiff's asylum application is unlawful and violates the APA, the INA, and USCIS's own regulations;

3. Grant such other and further relief as this Court deems appropriate under the circumstances; and

4. Grant attorney's fees and costs of court under the Equal Access to Justice Act (EAJA).

Respectfully submitted this, the 8th day of November, 2013.

## Grossman Law, LLC

110 N. Washington Street, Suite 350
Rockville, MD 20850
Telephone: (240) 4039-013
Fascimile: (240) 453-0915
E-mail: sandra@grossmanlawllc.com
ATTORNEYS FOR PLAINTIFF

/s/Sandra A. Grossman
Sandra A. Grossman

<u>/s/Rachel C. Zoghlin</u>
Rachel C. Zoghlin